NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In re the Matter of:

MICHAEL A. SERVIN, JR., *Petitioner/Appellant*,

*v.*

CHRISTINA E. QUEZADA, *Respondent/Appellee*.

No. 1 CA-CV 24-0006 FC

FILED 10-29-2024

---

Appeal from the Superior Court in Maricopa County
No. FC2017-002176
The Honorable Robert Ian Brooks, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

APPEARANCES

Michael A. Servin, Jr., Surprise
*Petitioner/Appellant*

Christina E. Quezada, Phoenix
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision in which Presiding Judge Michael J. Brown and Judge Daniel J. Kiley joined.

---

**W I L L I A M S**, Judge:

¶1        Michael Servin, Jr., ("Father") appeals the superior court's post-decree order denying his petitions to modify legal decision-making, parenting time, and child support. For the following reasons, we affirm in part and vacate and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        The parties divorced in 2018 and have two minor children in common. In the dissolution decree, and specific to this appeal, the superior court: (1) granted the parties joint legal decision-making authority, (2) granted Father, a member of the United States military, long-distance parenting time of 7 days per month, and (3) ordered him to pay Christina Quezada ("Mother") monthly child support of $497.00. After they divorced, the parties continued to litigate over matters related to the children.

¶3        In January 2021, after an evidentiary hearing on the parties' various motions, the superior court found that Father: (1) "committed significant domestic violence against his current spouse in the presence of his young child (not common to the parties) during the pendency of th[e] case," (2) "engaged in a pattern of behavior" against Mother that "amount[ed] to domestic violence" and prompted a court to issue a protective order on her behalf, (3) "suffers from mental health issues," and (4) "knowingly and intentionally presented false and/or misleading information to Mother and [the court] in an effort to hide his domestic violence history with his current wife and mental health issues." Given these findings, and considering all the relevant statutory factors, the court concluded that Mother had demonstrated a substantial and continuing change of circumstances materially affecting the welfare of the parties' minor children. Accordingly, the court granted Mother sole legal decision-making authority and ordered that Father could exercise his parenting time of 7 (12-hour) days per month only under the supervision of "an independent third-party agency or other appropriate adult mutually agreed upon in writing by the parties."

2

¶4            The court stated that it would not "consider" increasing Father's parenting time or removing the supervision requirement unless Father: (1) completed a domestic violence counseling program, (2) completed an anger management counseling program, (3) participated in "appropriate mental health services," (4) did not engage in any "further incidents of domestic violence (whether physical, verbal, mental or emotional)" for at least 6 months, (5) demonstrated mental health stability for at least 6 months, and (6) consistently exercised supervised parenting time for at least 6 months. The court also increased Father's child support obligation to $812.00 per month.

¶5            After unsuccessfully moving to alter or amend the January 2021 order, Father appealed, arguing "the superior court exceeded its statutory authority by restricting his ability to file a petition to modify legal decision-making and parenting time." *Servin v. Servin*, 1 CA-CV 21-0217 FC, 2022 WL 1087674, at *2, ¶ 7 (Ariz. App. Apr. 12, 2022) (mem. decision). Because access to courts is a fundamental right and the governing statute "provides the time frames and a cause requirement," this court vacated the six conditions from the modification order. *Id.* at ¶ 10.

¶6            During the pendency of that appeal, Father petitioned to modify child support, alleging that a substantial decrease in his monthly income warranted a recalculation. Following this court's resolution of his appeal, Father also petitioned to modify legal decision-making and parenting time, noting, among other things, that he had recently retired from military service and returned to Arizona. Mother, for her part, also petitioned to modify both parenting time and child support.

¶7            After an evidentiary hearing on the parties' motions, the superior court denied the petitions to modify parenting time and legal decision-making, finding neither Father nor Mother had demonstrated a change of circumstance "that affects the welfare of the children." The court also denied Father's petition to modify child support and both parties' requests for attorneys' fees.

¶8            Father moved for reconsideration, which the superior court denied. He then timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(2).

**DISCUSSION**

## I.    Legal Decision-Making and Parenting Time

**¶9**         Father challenges the superior court's denial of his petition to modify legal decision-making and parenting time. Distilled, he raises two claims.[1] *See Miller v. Ariz. Corp. Comm'n*, 227 Ariz. 21, 27–28, ¶ 26 (App. 2011) (explaining it is not the role of the appellate court to decipher, develop, and address arguments not clearly presented). First, Father contends the court "exceeded its statutory authority" by maintaining the restrictions on his legal decision-making authority and parenting time despite his compliance with the "requirements" enumerated in the January 2021 order. Second, he argues the court incorrectly found that the material changes in his circumstances did not affect the children's welfare.

**¶10**         When presented with a request to modify legal decision-making or parenting-time provisions, the superior court must first "ascertain whether there has been a change of circumstances materially affecting the welfare of the child." *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020). Determining whether such a change has occurred requires a "fact-intensive" inquiry, *Engstrom v. McCarthy*, 243 Ariz. 469, 472, ¶ 10 (App. 2018), and the party seeking modification bears the burden of proof, *Backstrand*, 250 Ariz. at 343, ¶ 14. The court does not proceed to determine whether a "change in custody will be in the best interests of the child" unless that burden has been satisfied. *Id*.

**¶11**         We review a ruling on a petition to modify legal decision-making or parenting time for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). We will not reweigh the evidence and instead "defer to the [superior] court's determinations of witness credibility

---

[1]         To the extent Father raises challenges to "travel costs," garnishment offsets, Mother's purported "perjury" and "fraud," Mother's petition for an order of protection, the adequacy of service of process on Mother, and a litany of other issues either without factual or legal development (or an explanation of their relevance on appeal) or for the first time in his reply brief, we do not address his claims. *See* ARCAP 13(a)(7) (stating that an appellant's opening brief must present an argument for each issue presented for review, "with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"); *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 25 n.5 (App. 2000) (holding issues raised for the first time in a reply brief are waived).

and the weight given to conflicting evidence." *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). We will accept the court's findings of fact unless they are clearly erroneous, considering only whether evidence reasonably supports them. *DeLuna*, 247 Ariz. at 423, ¶ 9; *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009).

¶12 Under A.R.S. § 25-411, governing the modification of legal decision-making and parenting time orders, the court may impose parenting time restrictions if it finds unrestricted parenting time "would endanger seriously the child's physical, mental, moral or emotional health." A.R.S. § 25-411(J). Although the court "must 'find' certain facts" to impose parenting time restrictions, the statute does not require that the "findings be reduced to writing or stated on the record." *Hart v. Hart*, 220 Ariz. 183, 187, ¶ 16 (App. 2009).

¶13 With these principles in mind, we consider the evidence presented at the evidentiary hearing. Father testified that he has participated in an anger management program, a domestic violence program, a parenting course, individual counseling, and cognitive behavioral therapy since the superior court's entry of the January 2021 order. Acknowledging he suffers from post-traumatic stress disorder, Father explained that he "received treatment" before his honorable discharge from the military in 2021. Pointing to a letter written by his treating psychologist, results from a neurological exam, and a home study conducted before he adopted his stepson, Father testified that he does not suffer from any mental impairment that would pose a safety risk to the children. When questioned about a domestic violence incident involving him and his current wife in July 2021, Father admitted that an altercation occurred in the presence of children but denied assaulting his wife and testified that despite his initial arrest, he was never charged with a crime. While describing himself as "a safe and stable parent," Father also acknowledged an incident in which he grabbed the eldest child by her hair and suggested that the children would benefit from counseling to help them overcome their "hostility" and "help mend everything." Finally, Father testified that the financial burden of paying for third-party supervision has prevented him from fully exercising his allotted parenting time. Mother, in turn, testified that Father causes the eldest child (who has engaged in self-harm and experienced suicidal ideations) "severe anxiety" and urged the court to retain the supervision requirement for the children's safety. When asked about Father's proposal that the children's paternal grandparents serve as parenting-time supervisors, Mother objected to any paternal family members serving in the supervisory role, asserting they would not intercede on the children's behalf.

¶14        Based on the evidence presented, the superior court entered a detailed order:

> The January 2021 Final Order extensively notes . . . the significant domestic violence between Father and his wife, Father's failure to treat his mental health, [and] how these actions have and could damage the children[.]
>
> . . .
>
> The evidence presented at [the evidentiary hearing] showed that this level of discord and disfunction has remained. The Court finds Father not credible in any statement regarding domestic violence or his mental health stability. The Court again finds that Father has engaged in significant domestic violence with his wife. Father continues to minimize the extent and nature of the domestic violence, does not understand the effect that it has on the children, attempts to use power and control dynamics with the Mother, and is generally unable to effectively parent in a way that promotes the best interest of the children. These were the exact circumstances that produced the January 2021 Final Order.
>
> . . .
>
> Father notes in his Petition to Modify that he has moved back to Arizona, that Mother has not attended to her oldest daughter's mental health needs, [and] Mother does not provide adequate notice to Father regarding various medical issues[.] . . . The Court agrees that many of these are a material change of circumstance, not least of which is Father moving to Arizona. However, case law requires that the Court find both that there has been a change of circumstance and that the change in circumstance "affects the welfare of the children." The Court does not find this second prong proven.
>
> . . .
>
> [T]he January 2021 Final Orders were less a long-distancing parenting plan and more a plan to enable Father to have some parenting time with his children in a way that protected them from Father's domestic violence and mental health instability. Those conditions remain whether Father lives in another state or Arizona. . . . Father may have moved to Arizona, but no

evidence demonstrated how that move affects the welfare of the children to justify a modification.

Father failed to prove his allegations regarding his oldest daughter's mental health stability. The evidence and testimony demonstrate that Mother did take appropriate action. This is not a change in circumstance that affects the welfare of the children. Mother has continued to care for the children appropriately.

. . .

Father appears to have misunderstood the purpose of [the January 2021 Final Order]: the Court's goal is not to have a parent participate in services as a checklist; it is to effectuate meaningful change that will help the parent safely provide for their child. While Father may have completed these items, the evidence demonstrates that Father continues to engage in domestic violence and h[a]s drastically minimized the extent of that violence. This is not a change in circumstance.

In short, even if the Court found that each individual example Father provided were a substantial change in circumstance, Father has not proven how any of them materially affect the welfare of the children.

¶15        The record supports the superior court's findings and conclusions. First, as the court explained, the "requirements" outlined in the January 2021 order did not establish a bar that, if cleared, guaranteed Father unrestricted parenting time. Rather, the "requirements" provided Father with concrete steps to improve his ability to safely parent. Second, while Father's participation in mental health and behavioral programs provides *some* evidence of an increased ability to safely parent, his involvement in an additional incident of domestic violence, his failure to meaningfully contest Mother's claim that he causes the eldest child "severe anxiety," and his admission that the children feel considerable "hostility" toward him weigh against a finding that he can safely parent the children without supervision. We will not substitute our judgment by reweighing the evidence or second-guessing the court's credibility determinations. *See Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015) (noting the superior court "is in the best position to judge the credibility of witnesses and resolve conflicting evidence").

7

**¶16** In sum, because the superior court specifically found in its January 2021 order that granting Father unrestricted parenting time would endanger the children's physical, mental, moral or emotional health, Father bore the burden of demonstrating a change in circumstances that alleviated that risk of harm. During his hearing testimony, Father established several material changes in his circumstances since January 2021 – his discharge from the military, his relocation to Arizona, and his participation in mental health and behavioral services. But consistent with the superior court's findings, Father minimized the seriousness of the domestic violence and its effect on the children. Therefore, on this record, the superior court neither abused its discretion nor exceeded its statutory authority by finding none of Father's changes in circumstance rendered him fit to safely parent without supervision and denying his petition to modify legal decision making and parenting time accordingly.[2]

## II. Child Support

**¶17** Father challenges the superior court's denial of his petitions to modify child support. We review a ruling on a petition to modify a child support award for an abuse of discretion. *Candia v. Soza*, 251 Ariz. 321, 324, ¶ 7 (App. 2021). An abuse of discretion includes an error of law or an absence of substantial evidence to support the court's findings. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8 (App. 2012).

**¶18** The Arizona Supreme Court has adopted the Child Support Guidelines ("Guidelines"), codified at A.R.S. § 25-320. *Little v. Little*, 193 Ariz. 520, 521, ¶ 6 (1999). Under the Guidelines, a court may modify a child support order only if a parent shows a substantial and continuing change of circumstances. A.R.S. §§ 25-327(A), -503(E), (H). Whether a substantial and continuing change warranting a modification of child support occurred is a question of fact. *Nia v. Nia*, 242 Ariz. 419, 423, ¶ 9 (App. 2017).

**¶19** A party seeking child support modification may use a standard or simplified procedure. Guidelines, § 14(B), (C). When using the simplified procedure, the party seeking to modify must submit a sworn child support worksheet and "documentation supporting the incomes if different from the court's most recent findings regarding income of the

---

[2] In his reply brief, Father argues for the first time on appeal that the superior court's parenting-time supervision requirement, devoid of an express end date, contravenes Arizona Rule of Family Law Procedure 81. Because Father failed to raise this claim in his opening brief, we do not address it. *In re Marriage of Pownall*, 197 Ariz. at 583, ¶ 25 n.5.

parents." Guidelines, § 14(C)(3). "If the party requesting the modification is unable to provide documentation supporting the other party's income, the requesting party must indicate that the income amount is attributed/estimated and state the basis for the amount listed." *Id.* "[I]f application of the [G]uidelines results in an order that varies 15% or more from the existing amount," the variation "is considered evidence of substantial and continuing change of circumstances." Guidelines, § 14(C)(1)(a).

¶20 In June 2021, Father petitioned to modify child support using the simplified procedure, asserting his monthly income had decreased from $5,986.89 to $3,910.74 following his discharge from the military. Without explanation or documentation, Father also asserted that Mother's monthly income had increased from $3,482.27 to $3,986.67 since January 2021. According to Father, these changes warranted a decrease of his monthly child support obligation from $812.00 to $505.00.

¶21 The superior court scheduled an evidentiary hearing for October 28, 2021 to address Father's petition to modify child support, among other things. In anticipation of the hearing, Mother filed an affidavit of financial information, reporting a monthly income of $4,160.00. "[A]t Father's request," however, the court did not address the June 30, 2021 petition to modify child support at the evidentiary hearing.

¶22 Given the sheer volume of the parties' pleadings, the superior court denied Father's November 2022 request for an evidentiary hearing on his June 2021 petition to modify child support, explaining it would hold a single evidentiary hearing on the parties' numerous motions. In January 2023, Father again petitioned to modify child support. About the same time, he also filed an affidavit of financial information, reporting a monthly income of $4,233.77. In March 2023, Mother filed an updated affidavit of financial information, reporting a monthly income of $5,000.66. The court ultimately held an evidentiary hearing on the parties' various motions in September 2023.

¶23 In considering whether Father established a substantial and continuing change in his June 2021 petition to modify child support, the superior court began by recounting the relevant information underlying the January 2021 child support order of $812.00 per month: (1) Father's monthly income of $5,986.80, (2) Mother's monthly income of $3,482.77, (3) Father's deduction for one child, (4) Father's monthly children's health insurance credit of $30.15, and (5) Father's parenting time adjustment for 42 days per year. Noting Father failed to submit the requisite sworn parent's worksheet

for child support and documentation of Mother's income, the court reviewed the record for the parties' 2021 financial information and determined that while Father self-reported only monthly pension benefits of $3,910.74 in his affidavit of financial information, a tax document reflected that he received wages of $20,998.00 in 2021. Inferring that the annual wages supplemented the pension benefits (because the pension benefits, in aggregate, substantially exceeded the wages reflected in the 2021 tax document), the court determined that Father received monthly compensation of $5,660.57 in 2021. Characterizing "evidence about Mother's 2021" monthly income as "scant," the court concluded that Father had failed to "prove, procedurally or substantively, that a child support modification was warranted" in June 2021. The court also summarily denied Father's January 2023 petition to modify child support, citing its reasoning for denying his June 2021 petition.

¶24 Despite Father's technical noncompliance with the Guidelines' requirements, the record contains reasonable evidence that Mother's monthly income substantially increased from January 2021 ($3,482.77) to October 2021 ($4,160.00) – approximately 20%, while Father's income decreased during that time (from $5,986.80 to $5,660.57 – adopting, for purposes of this analysis, the superior court's inferential determination) – approximately 5%. Likewise, the record contains reasonable evidence that Mother's monthly income substantially increased from January 2021 ($3,482.77) to March 2023 ($5,000.66) – over 40%, while Father's income decreased during that time (from $5,986.80 to 4,233.77) – over 25%. Therefore, on this record, the superior court abused its discretion by denying Father's petitions to modify child support based on insufficient evidence of a substantial and continuing change of circumstances. On remand, the court should consider whether the parties' changes in circumstances warrant a retroactive application of a modified child support order to the first day of the month following Father's actual notice of the respective petitions to modify. *See* A.R.S. § 25-327(A) ("Modifications . . . are effective on the first day of the month following notice of the petition for modification . . . unless the court, for good cause shown" orders the modification to be "effective at a different date not earlier than the date" the petition was filed).[3]

---

[3] Because we vacate the superior court's denial of Father's petitions to modify child support, we need not address any of Father's other procedural and evidentiary challenges to that ruling.

### III. Attorney's Fees

**¶25** Father challenges the superior court's denial of his request for attorney's fees. Under A.R.S. § 25-324, the court may award attorney's fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. We review a court's ruling on an attorney's fees request under this statute for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

**¶26** Although Father's opening brief lists the denial of his attorney's fees request as an issue on appeal, he failed to cite any relevant supporting authority or develop an argument. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007) (an appellant's failure to develop and support an argument waives the issue on appeal). Waiver aside, the record supports the superior court's findings that the parties "have a relatively similar financial situation" and that both Father and Mother took "unreasonable positions in this matter" and "unnecessarily increased the cost of litigation." Therefore, the superior court did not abuse its discretion by denying Father's request for attorney's fees.

### CONCLUSION

**¶27** For the foregoing reasons, we affirm in part and vacate and remand in part for proceedings consistent with this decision. Both parties request an award of attorney's fees on appeal. Neither party is represented by counsel on appeal, so we deny both requests. Each party has prevailed in part and therefore both are responsible for their own costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV